IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT ALLEN SKINNER,

    Plaintiff,

v.                                                                    No. 1:22-cv-0901 KWR/DLM

LORENZO MATA and
MARKA SALAS,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

THIS MATTER is before the Court on Defendants Lorenzo Mata and Marka Salas's Motion to Dismiss (Doc. 140), Plaintiff Robert Skinner's Motion to Amend (Doc. 98), and Plaintiff's Motion for Default Judgment (Doc. 115). For the reasons discussed herein, I recommend granting in part the motion to dismiss; granting the motion to amend as unopposed; and denying the motion for default judgment.

**I.**     **Relevant Background**[2]

On June 18, 2021, authorities arrested Skinner in New Mexico for crimes he allegedly committed in New Mexico. (*See* Doc. 80 at 13.) *See also New Mexico v. Skinner*, D-424-CR-202100058, Crim. Info. (4th Jud. Dist. Ct. N.M. July 9, 2021). Skinner was held at the Guadalupe County Correctional Facility. (*See* Doc. 80 at 14, 60.) The arresting officer ran Skinner's name through the National Crime Information Center (NCIC) database and learned that authorities in

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, United States District Judge Kea W. Riggs referred this case to the undersigned "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 93.)

[2] The Court recites the facts as derived from the Fourth Amended Complaint and exhibits attached thereto and views all well-pleaded factual allegations in a light most favorable to Skinner. *See Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

1

Charlotte County, Florida issued a warrant for Skinner's arrest on June 3, 2021, on charges of burglary and theft. (*See* Doc. 80 at 13–14, 55–56, 59.[3]) Consequently, on July 8, 2021, the State of New Mexico filed a Fugitive Complaint against Skinner, alleging that he was subject to extradition to Florida to face the pending charges. (*See id.* at 14, 60.)

Skinner appeared at a Fugitive from Justice Arraignment on July 9, 2021, denied that he was the person sought in the Fugitive Complaint, and chose not to waive extradition. (*See id.* at 14, 61.) The court appointed counsel to Skinner. *See Skinner*, M-21-ER-202100012, Conditional Order of Appointment (Guad. Cnty. Mag. Ct. July 9, 2021). On September 2, 2021, a Florida Assistant State Attorney filed an Application for Requisition to the Florida Governor, in which it was incorrectly stated that Skinner was physically located in Texas. (*See* Doc. 80 at 63–64.)

On September 17, 2021, Skinner's attorney filed a Stipulated Motion to Dismiss the Fuguitive Complaint on the basis that Skinner had not been arrested pursuant to a "governor's warrant" within the time specified in N.M. Stat. Ann. § 31-4-17. (*See id.* at 68.) The Court entered a Stipulated Order of Dismissal on September 21, 2021. (*See id.* at 69.) Skinner asserts that Defendants Mata, Guadalupe County Sheriff, and Salas, secretary to Mata, were "well-versed" in extradition law and were in "constant contact" with the New Mexico assistant district attorney involved in his fugitive complaint. (*See id.* at 2, 18, 20–21.)

He further alleges that at some point in November, "Mata[] contacted the Charlotte County Sheriff's Office . . . and told them that [Skinner] was available for 'immediate pick[-up] . . . .'" (Doc. 80 at 18.) Skinner asserts that Salas conspired with Mata to arrange for Skinner's extradition. (*See, e.g., id.* at 13, 44.) Agent Clark, an extradition agent, retrieved Skinner and delivered him to

---

[3] Skinner included copies of several state docket entries as exhibits to his Fourth Amended Complaint. For ease of reference, the Court will refer to all exhibits by their page numbers, rather than by their exhibit letters. (*See* Doc. 80 at 55–79.)

2

authorities in Florida on November 22, 2021. (*Id.* at 18, 70–71.) Skinner asserts that although Mata and Salas knew Skinner had a right to challenge extradition through a writ of habeas corpus, they surrendered him to the extradition agent without a governor's warrant and without affording him notice of the impending extradition or an opportunity to challenge it. (*See id.* at 20–21, 23–24, 27.) Skinner now brings suit against Mata and Salas pursuant to 42 U.S.C. § 1983.

## II.     Legal Standards

Skinner's "pro se . . . pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Still, the Court may not "serv[e] as the litigant's attorney in constructing arguments and searching the record." *Id.* (citation omitted).

### A.     Motion to Dismiss

In deciding a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court construes the pleadings "in the light most favorable to the plaintiff[,]" *see Hall*, 935 F.2d at 1109, and "relief must follow from the facts alleged." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "If [the complaint] omits some necessary facts, however, it may still suffice so long as the court can plausibly infer the necessary unarticulated assumptions." *See id.*

### B.     Qualified Immunity

"In assessing a qualified immunity defense" in the context of a motion to dismiss, the Court

"must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson*, 769 F. App'x 573, 575 (10th Cir. 2019) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). The defendant will prevail if the plaintiff fails to meet his burden on either prong, and the Court may address the prongs in either order. *See Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019), *cert. denied Cummings v. Bussey*, 140 S. Ct. 81 (2019).

### III. The Court recommends granting in part the motion to dismiss.

In a bare bones motion, Defendants argue that Skinner's Fourth Amended Complaint reasserts claims the Court previously dismissed in its May 2, 2023 Memorandum Opinion and Order. (*See* Doc. 140 (citing Doc. 71).) In that Opinion, the Court screened Skinner's claims pursuant to 28 U.S.C. § 1915A and afforded Skinner an opportunity to submit another amended complaint. (*See* Doc. 71 at 4, 11.) The Court will now give Skinner's claims a fresh look, having the benefit of further development of the record and briefing from the parties.

Reading the Complaint as a whole and liberally construing the allegations therein, Skinner asserts three general claims pursuant to § 1983:[4] (1) violations of his right to extradition proceedings, i.e., to have a governor's warrant issued for his arrest pursuant to N.M. Stat. Ann. § 31-4-7 and to have an opportunity to apply for a pre-extradition habeas corpus hearing based on Article IV, § 2, cl. 2 of the Constitution, 18 U.S.C. § 3182, and N.M. Stat. Ann. § 31-4-10 (*see* Doc. 80 at 13–31); (2) conspiracy to violate his right to extradition proceedings (*see id.* at 44–49); and (3) claims related to the probable cause finding underlying the Florida charges and to an alleged deprivation of his liberty and freedom under the Fifth and Fourteenth Amendments (*see*

---

[4] Skinner purports to bring eight claims against Defendants, but the claims are largely duplicative. (*See* Doc. 80.) Based on the Court's reading of the Fourth Amended Complaint, Skinner's eight claims may be condensed into three.

4

*id.* at 32–43). Before turning to the substance of Skinner's claims, the Court will review relevant extradition law as applied to the facts at issue.

    **A.**    **Extradition Law**

Interstate extradition is controlled by three sources of law. The Constitution's Extradition Clause constitutes the original authority. *See Ortega v. City of Kan. City, Kan.*, 875 F.2d 1497, 1499 (10th Cir. 1989) (discussing U.S. Const. art. IV, § 2, cl. 2). The Extradition Clause provides in relevant part that when a person who is charged with a crime in one state flees to another state, the state where the person allegedly committed the crime can demand the person's return. U.S. Const. art. IV, § 2, cl. 2. Congress effectuated the Extradition Clause through 18 U.S.C. § 3182, which provides that when the executive authority of a state where an individual committed a crime (the "demanding state") produces proper documents to the state where a fugitive has fled (the "asylum state"), the executive of the asylum state must arrest the fugitive and deliver them to the demanding state within a set time.

The Uniform Criminal Extradition Act (UCEA) "sets forth in greater detail than [18 U.S.C. § 3182] the processes and documents necessary in an extradition proceeding." *See Reed v. New Mexico ex rel. Ortiz*, 947 P.2d 86, 98 (N.M. 1997), *judgment rev'd sub nom. on other grounds*, *New Mexico ex rel. Ortiz v. Reed*, 524 U.S. 151 (1998) (*comparing* N.M. Stat. Ann. § 31-4-3 (form of demand), *with* 18 U.S.C. § 3182 (procedural and documentation requirements)) (additional citations omitted). New Mexico is one of 48 states that has adopted the UCEA. *See id.* The Court will outline how the UCEA applied here.

In June 2021, Charlotte County, Florida authorities issued a warrant for Skinner's arrest and forwarded for inclusion in the NCIC. (*See* Doc. 80 at 13–14, 56–58.) *See also* Leslie W. Abramson, *Extradition in America: Of Uniform Acts and Governmental Discretion*, 33 Baylor L.

5

Rev. 793, 794–95 (1981) (describing the extradition process). On June 18, 2021, a New Mexico State Police officer arrested Skinner for a crime he allegedly committed in New Mexico and ran Skinner's name through the NCIC. (*See* Doc. 80 at 13.) When the officer discovered the pending Florida warrant, he arrested Skinner on that information as well. (*See* Doc. 80 at 13–14, 57–58.) New Mexico filed a Fugitive Complaint based on the Florida warrant, and Skinner appeared in the Guadalupe County Magistrate Court for a Fugitive from Justice Arraignment. (*See id.* at 60–61.) *See also* N.M. Stat. Ann. § 31-4-14.[5]

      The UCEA required the magistrate, at the arraignment, to inform Skinner of the grounds for his arrest. *See* N.M. Stat. Ann. § 31-4-14; *see also* Abramson, 33 Baylor L. Rev. at 795–96. Skinner had the choice to waive extradition, but he did not. (*See* Doc. 80 at 61.) *See also* N.M. Stat. Ann. § 31-4-22; Abramson, 33 Baylor L. Rev. at 796. The magistrate also informed Skinner of his "right to require the issuance and service of a warrant of extradition." (*See* Doc. 80 at 61.) *See also* N.M. Stat. Ann. § 31-4-15 (providing that the individual may be committed to county jail for up to 30 days to "enable the arrest of the accused to be made under a warrant of the governor"); N.M. R. Crim. P. Magist. Ct. 6-811 (outlining the procedure at the arraignment on a fugitive complaint). Finally, the magistrate advised Skinner of his right to contest the governor's "warrant of extradition through a writ of habeas corpus." (*See* Doc. 80 at 61.) *See also* N.M. Stat. Ann. § 31-4-10. The UCEA requires that "the judge . . . **shall fix a reasonable time** . . . within which [the defendant may] apply for a writ of habeas corpus." N.M. Stat. Ann. § 31-4-10 (emphasis added).

---

[5] There are essentially two ways an individual may be arrested if the demanding state wants to pursue extradition. *See* Abramson, 33 Baylor L. Rev. at 795. First, law enforcement may obtain a fugitive warrant from "a magistrate in the asylum state" and arrest the individual on that warrant. *See id.* Alternatively, law enforcement may arrest the individual upon reasonable information but without a fugitive warrant. *See id.* In that case, they must take the individual to the magistrate in the asylum state where "a complaint is made, under oath, setting forth grounds for the arrest." *Id.* at 795–96; *see also* N.M. Stat. Ann. § 31-4-14. Skinner was arrested under this second alternative—upon reasonable information from the NCIC alert but without a fugitive warrant issued by a New Mexico magistrate.

The UCEA allows temporary detention of the fugitive "to permit time for the demanding state agency to prepare an 'application,' for the requisition warrant to be prepared and signed by the Governor of the demanding state, and for the Governor of the asylum state to review it upon receipt and decide whether or not to issue a rendition warrant." *See* Abramson, 33 Baylor L. Rev. at 797; *see also* N.M. Stat. Ann. §§ 31-4-3–4. The asylum state's rendition warrant is known as a "governor's rendition warrant," *see, e.g.*, N.M. R. Crim. P. Magist. Ct. 6-811(F), or simply as a "governor's warrant," *see, e.g.*, *Reed*, 947 P.2d at 94 (referring to the New Mexico governor's rendition warrant as a governor's warrant).

"If the accused is not arrested under warrant of the governor by the expiration of the time specified in the warrant or bond, a judge or magistrate may discharge him . . . ." N.M. Stat. Ann. § 31-4-17; *see also* Abramson, 33 Baylor L. Rev. at 797 ("After expiration of the time period within which the Governor's warrant was to issue, the court may dismiss the fugitive warrant"). Here, the magistrate granted the parties' Stipulated Motion to Dismiss without prejudice "for failure to comply with the time limits required under . . . § 31-4-17." (*See* Doc. 80 at 68–69.) The order specified that the State may refile the matter at a later date. (*Id.* at 69.)

One final section of the UCEA is relevant to this case: Section 31-4-19 states that if there is a criminal prosecution pending against the fugitive based on a violation of New Mexico law, "the governor, in [her] discretion, either may surrender him on demand of the executive authority of another state or hold him until he has been tried and discharged or convicted and punished in this state." The Kansas Court of Appeals, examining an identical Kansas statute,[6] Kan. Stat. Ann. § 22-2719, construed the statutory language to mean that where the fugitive is pending criminal

---

[6] "[B]ecause the [UCEA] is a uniform law, decisions from other states are valuable for the interpretation of its provisions." *Edwards v. Bowles*, No. 3:03-CV-2624-M, 2004 WL 308036, at *10 (N.D. Tex. Feb. 18, 2004), *R&R adopted*, 2004 WL 741290 (N.D. Tex. Mar. 16, 2004) (quoting *Hill v. Blake*, 441 A.2d 841, 844 (Conn. 1982)) (gathering cases).

7

prosecution on state charges, "the fugitive from justice warrant acts as a secondary hold which has no effect until [the fugitive] has been 'tried and discharged or convicted and punished' on the local cases." *Campbell v. Easter*, 421 P.3d 260, at *1 (Kan. Ct. App. 2018). Any time limit "on an extradition warrant is tolled" while the asylum state prosecutes its charges. *See id.* (citing *In re Habeas Corpus Application of Lane*, 845 P.2d 708, 709 (Kan. App. 1992)) (subsequent citations omitted). "In effect, the extradition warrant is suspended until the [asylum state] cases are concluded." *Id.* Consequently, any "claim for relief from the extradition warrant [is] not ripe" until the asylum state cases are resolved. *See id.*; *see also Meechaicum v. Fountain*, 696 F.2d 790, 792 (10th Cir. 1983) (noting that charges in the asylum state "appear[] to take precedence" as the parties agreed that the fugitive would "not be extradited until the" charges in the asylum state were resolved); *Rhode Island v. DeAngelis*, 658 A.2d 7, 10 (R.I. 1995) (noting that the asylum state governor has discretion under an identical statute "either to hold and to prosecute a person in this state while that person remains a fugitive from justice in another or to deliver the fugitive to the other state" after the state charges are resolved); *Procedures for domestic extradition*, 1 Wharton's Criminal Procedure § 6:12 (14th ed.) ("If the asylum state is also pursuing charges against the defendant, state statutes usually provide for the asylum state to proceed against the defendant in its own courts first, if it chooses to do so.").

Because Skinner was awaiting prosecution on New Mexico state charges, the New Mexico governor would have had discretion to delay any extradition proceedings until after the New Mexico state case was resolved. *See* N.M. Stat. Ann. § 31-4-19. If the governor had chosen that option, Skinner could have then waived or refused to waive extradition after the state case concluded. *See Campbell*, 421 P.3d at *1 (noting that if the fugitive waives extradition, then "a governor's warrant would be obtained and" the fugitive would "be given a reasonable time to apply

for a writ of habeas corpus to challenge the legality of his arrest") (citation omitted). The New Mexico governor was never faced with that choice here, however, as the magistrate dismissed the Fugitive Complaint on September 21, 2021, before the New Mexico criminal proceedings concluded on November 19, 2021. (*See* Doc. 80 at 69.) *See also Skinner*, D-42-CR-2021-00058, Nolle Prosequi (4th Jud. Dist. N.M. Nov. 19, 2021).

> **B.** **The Court recommends denying the motion with respect to Skinner's claims that Defendants violated his right to extradition proceedings.**

Skinner alleges that Defendants denied him his right to extradition proceedings, including a governor's warrant and an opportunity to apply for a pre-extradition habeas corpus hearing. (*See* Doc. 80 at 13–31.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States[] and must show that the alleged deprivation was committed by a person acting under color of state law." *Pena v. Greffet*, 922 F. Supp. 2d 1187, 1218 (D.N.M. 2013) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Defendants do not deny that they were acting under color of state law (*see* Doc. 140); thus, the Court examines only whether Skinner has demonstrated the violation of a federal right.

The law is clearly established that "[a] complaint which charges abuse of the extradition power by noncompliance with applicable law states a claim under 42 U.S.C. § 1983 . . . ." *See Sanders v. Conine*, 506 F.2d 530, 532 (10th Cir. 1974); *see also, e.g., Ortega*, 875 F.2d at 1500 (discussing the "ample circuit court authority [establishing] that failure to comply with the provisions of the [UCEA] . . . can support recovery on § 1983 claims") (citations omitted); *Harden v. Pataki*, 320 F.3d 1289, 1292–93 (11th Cir. 2003) (finding that the denial of the rights to a governor's warrant and a pre-extradition habeas corpus hearing gives rise to a cause of action under § 1983); *Killingsworth v. Moya*, No. CIV 07-389 MV/CEG, 2007 WL 9733621, at *3 (D.N.M. Aug. 8, 2007), *R&R adopted*, 2007 WL 9729218 (D.N.M. Sept. 29, 2007).

The Court finds three cases helpful in considering this claim: *Harden v. Pataki*, 320 F.3d 1289 (11th Cir. 2003), *Morrison v. Stepanski*, 839 F. Supp. 1130 (M.D. Penn. 1993), and *Bolick v. Thompson*, No. 5:20-CV-02888-RBH, 2021 WL 2283880 (D.S.C. June 3, 2021). In *Harden*, the plaintiff alleged that while he was confined in an Atlanta federal penitentiary, "he was arrested and, without a signed extradition warrant, a waiver of his extradition rights, or a habeas hearing, and over his protests, [he was] extradited to New York . . . ." 320 F.3d at 1292. Harden filed a complaint under § 1983, and the district court dismissed his complaint for failure to state a claim. *See id.* The Eleventh Circuit reversed and held that the allegations, if true, were sufficient to state a claim under § 1983. *See id.* at 1292–94.

In *Morrison*, the plaintiff alleged that two Pennsylvania state troopers, with knowledge that the New York State Police had issued a "be on the lookout" alert for Morrison, found him walking on a Pennsylvania highway and took him into custody by placing him in their squad car. 839 F. Supp. at 1132–33. The troopers asked Morrison about extradition, and he responded "that he wanted to return to New York and 'get things over with,' a statement they interpreted as a willingness to waive [a challenge to] extradition." *Id.* Morrison sued, alleging that the troopers' "conduct unlawfully deprived him of the right to counsel, the right to petition for writ of habeas corpus to challenge his arrest, and the right to extradition proceedings." *Id.* The court ultimately held that Morrison did not knowingly waive his extradition rights and, therefore, the troopers were liable under § 1983. *See id.* at 1133, 1141.

In *Bolick*, the plaintiff was arrested on a governor's warrant and, after appearing in court, asserted his right to file a habeas petition. 2021 WL 2283880, at *3. On the same day, someone from the district attorney's office in the asylum state notified authorities in the demanding state that Bolick was ready to be picked up. *Id.* Authorities retrieved Bolick over his protest and before

10

he applied for a writ of habeas corpus in the asylum state. *See id.* The court found that he plausibly alleged a § 1983 claim for failure to comply with the UCEA provision that allowed him to file a habeas petition to "test[] the legality of his arrest on the governor's extradition arrest warrant." *Id.* at \*5 (citations omitted).

Here, Skinner alleges that Salas and Mata were "well-versed" in extradition law and were in "constant contact" with the New Mexico assistant district attorney involved in his Fugitive Complaint, implying that they knew the complaint had been dismissed. (*See* Doc. 80 at 18, 20– 21.) He asserts that despite the magistrate's dismissal of the Fugitive Complaint, "Salas, under the authority of . . . Mata, contacted the Charlotte County Sheriff's Office . . . and told them that [Skinner] was available for 'immediate pick[-up]'" in violation of his rights to a governor's warrant and an opportunity to petition for a writ of habeas corpus. (*See id.* at 18, 20.) Considering the persuasive authority outlined above, the Court finds that these facts, taken as true, are sufficient to state a claim under § 1983 for a violation of Skinner's right to extradition procedures guaranteed by the UCEA and federal law.

Defendants argue that Skinner's extradition-based claims should be dismissed due to the Court's previous finding that, pursuant to N.M. Stat. Ann. § 31-4-19, there was no need to obtain a governor's warrant before extraditing Skinner because he was facing criminal prosecution in New Mexico. (*See* Doc. 140 at 3–4 (citing Doc. Doc. 71 at 12).) However, having the benefit of a more robust record, the parties' briefs, and on further consideration of persuasive authority as discussed in Section III(A) above, the undersigned disagrees that Skinner's pending New Mexico prosecution obviated the need for appropriate extradition procedures, including a governor's warrant and the opportunity to petition for a writ of habeas corpus. Again, § 31-4-19 merely addresses the asylum state's ability to choose to prosecute the fugitive on asylum state charges

*before* following normal extradition procedures to return the fugitive to the demanding state. The undersigned's proposed construction of § 31-4-19 is bolstered by the "canon against surplusage," which "indicates that [courts] generally must give effect to all statutory provisions, so that no part will be inoperative or superfluous—each phrase must have distinct meaning." *See Navajo Nation v. Dalley*, 896 F.3d 1196, 1215 (10th Cir. 2018) (quoting *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1283 n.15 (10th Cir. 2017)) (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, at 174 (2012) ("If possible, every word and every provision is to be given effect . . . . None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.")).

Accordingly, the undersigned recommends the Court exercise its discretion to reconsider its May 2, 2023 finding regarding the effect of § 31-4-19. *See, e.g.*, *Anderson Living Tr. v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 436 (D.N.M. 2015) (stating that "in the Tenth Circuit, a district court is under no obligation whatsoever to abide by its prior interlocutory orders") (citing *Ribert v. Eli Lilly & Co.*, 647 F.3d 1247, 1252 (10th Cir. 2011)). Specifically, the undersigned recommends finding that Skinner has adequately alleged the violation of his extradition rights.

Defendants also argue that to the extent Skinner "claims that the Defendants failed to 'alert' him that Florida was sending an extradition agency[,]" he does not adequately show that they "prohibited him from filing any such petition or that he was extradited while such writ was pending." (*Id.* at 3–4 (citing Docs. 80 at 22; *Scull v. New Mexico*, 236 F.3d 588 (10th Cir. 2000)).) This argument ignores the normal order of events: once an individual declines to waive his extradition rights, *then* a governor's warrant is issued and the individual is "given a reasonable time to apply for a writ of habeas corpus to challenge the legality of his arrest." *See Campbell*, 421 P.3d at *1; *see also Gee v. State of Kan.*, 912 F.2d 414, 416 (10th Cir. 1990) (stating that "[b]efore

12

a fugitive in custody is extradited to the demanding state, he may challenge the authority of the asylum state by seeking a federal writ of habeas corpus") (citations omitted); N.M. Stat. Ann. § 31-4-10 (outlining the right to apply for writ of habeas corpus by a person arrested on a governor's warrant). As with the plaintiffs in both *Harden* and *Morrison*, the simple act of extraditing Skinner without a governor's warrant effectively prohibited him from filing a petition. *See, e.g.*, *Harden*, 320 F.3d at 1292–94; *Morrison*, 839 F. Supp. at 1132.

Defendants cite *Scull* but develop no argument about the case. (*See* Doc. 140 at 4.) In *Scull*, the plaintiff (Reed) was arrested on a governor's warrant and booked into the Taos County Adult Detention Center. *See Scull*, 236 F.3d at 592, 597. Reed filed a petition for a writ of habeas corpus at his arraignment. *See id.* at 592. The petition was granted, and he was released. *See id.* Sometime later, Reed was in a car accident. *Id.* When police ran his name through NCIC, they discovered the same outstanding warrant but were unaware that the matter had been resolved. *See id.* Police arrested Reed and took him to the Bernalillo County Detention Center (BCDC). *Id.* He showed the order of release to BCDC employees, but they did not release him. *See id.* The county district attorney's office Extradition Coordinator was also made aware of the situation, but for reasons not relevant here, she declined to initiate extradition proceedings. *See id.* at 592–94. Reed was held in the BCDC for 30 days and ultimately released based on the earlier grant of his habeas corpus petition. *See id.* at 592, 594. Reed sued the BCDC employees for, inter alia, ignoring his requests for an attorney and a hearing. *See id.* at 597. The district court granted summary judgment to the defendants on the basis of qualified immunity. *See id.* The Tenth Circuit construed Reed's claim to allege that the BCDC employees "violated his right to extradition process" by "failing to initiate extradition proceedings . . . ." *Id.* The Tenth Circuit stated that "[t]he problem with this argument is that the authority to initiate extradition proceedings lies not with the BCDC [employees] but

rather with the District Attorney's office." *Id.* As such, the BCDC employees were entitled to qualified immunity. *See id.*

It is this finding—that the "jailer defendants had no . . . duty" to investigate the order releasing Reed—that Defendants refer to in a parenthetical. (Doc. 140 at 4.) To the extent Defendants argue that the *Scull* holding entitles them to qualified immunity, the Court disagrees. The facts in *Scull* are distinguishable. Whereas the defendants in *Scull* were accused of "failing to initiate" the required proceedings, Defendants here allegedly initiated extradition knowing that Skinner's extradition proceedings had already been halted.

Moreover, Defendants' argument is premature. *Scull* was decided at the summary-judgment stage with the benefit of a full record. Defendants may be entitled to qualified immunity, but "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects [D]efendant[s] to a more challenging standard of review than would apply on summary judgment." *See Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quotations omitted). "At [the motion to dismiss] stage, it is [D]efendant[s'] conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Because Skinner alleges that Defendants initiated contact with and transferred Skinner to Florida authorities despite their knowledge of the dismissal of the Fugitive Complaint, the Court finds he has plausibly demonstrated the violation of a clearly established right to extradition procedures. Accordingly, the Court recommends denying the motion to dismiss this claim.

### C.   The Court recommends denying the motion with respect to the conspiracy claim.

Skinner alleges that Mata and Salas conspired to deprive him of his right to extradition proceedings. (Doc. 80 at 44–49.) To state a claim for conspiracy under § 1983, Skinner must allege facts to demonstrate "an agreement and concerted action among defendants, an agreement upon a

common, unconstitutional goal, and concerted action taken to advance that goal." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (citations and quotation marks omitted). "[B]ecause [d]irect evidence of an agreement to join a . . . conspiracy is rare, . . . a defendant's assent can be inferred from acts furthering the conspiracy's purpose." *Id.* (citations and quotation marks omitted).

Skinner asserts that Defendants, with knowledge that Skinner had a right to extradition procedures and that the Fugitive Complaint was dismissed, "made a willful decision to" surrender him to Florida authorities in violation of his rights. (*See* Doc. 80 at 44.) To that end, Skinner alleges, "Salas, under the authority of . . . Mata," contacted Florida about retrieving Skinner. (*Id.* at 45.) These allegations are sufficient to allege the existence of a conspiracy to violate Skinner's extradition rights. In opposition, Defendants argue only that Skinner failed to demonstrate the violation of any right, an argument with which the undersigned disagrees. (Doc. 140 at 6–7; *see also supra* Section III(A–B).) Consequently, the Court recommends denying the motion to dismiss with respect to Skinner's conspiracy claim.

### D. The Court recommends dismissing any claims that implicate the Florida judgment.

The Court also reads Skinner's complaint to assert a claim that attacks the probable cause finding underlying the Florida charges (Doc. 80 at 37–40), and to assert a claim for the "loss of [his] liberty [and] freedom" pursuant to the Fifth and Fourteenth Amendments (*id.* at 41–43). The Court will examine each in turn.

Skinner alleges that the affidavit supporting the Florida warrant "was factually void" and, as a result, the warrant lacked probable cause. (*Id.* at 37, 39–40.) Specifically, he questions whether the affidavit supports a finding that he committed the crime. (*Id.* at 39–40.) It is beyond the purview of this Court, however, to question the Florida authorities' probable cause finding. *See, e.g.*,

15

*Harden*, 320 F.3d at 1297 (finding that "improper extradition by the asylum state . . . cannot impugn the probable cause determination of the demanding state"). Thus, the Court recommends granting the motion to dismiss this claim.

Skinner's claim for "loss of liberty and freedom" under the Fifth and Fourteenth Amendments is hard to follow, but it appears he believes Defendants should be held liable for their conduct on an alternative or additional basis because he was ultimately found guilty of and is serving time on the Florida charges. (*See* Doc. 80 at 41–43.) Had Defendants not surrendered him to the Florida authorities, Skinner asserts, "he would have been able to walk out of [the New Mexico] jail a free man . . . ." (*Id.* at 43.) Skinner's freedom following the Florida proceedings, however, is not the proper subject of his extradition-related claims in New Mexico. *See, e.g.*, *Harden*, 320 F.3d at 1297. Again, improper extradition proceedings "cannot impugn . . . the subsequent adjudication of guilt of the person extradited." *See id.* "Whether the person was convicted or sentenced after the extradition . . . is inconsequential[,]" and any "actual, compensable injury . . . does *not* encompass the 'injury of being convicted and imprisoned.'" *Id.* at 1297 & 1301 n.16; *cf. Skinner v. Florida*, No. 4:22-CV-00249-WS-MAF, 2022 WL 3588058, at *4 (N.D. Fla. July 19, 2022), *R&R adopted sub nom.*, 2022 WL 3586523 (N.D. Fla. Aug. 22, 2022) (stating that "illegal extradition would not deprive the receiving state of jurisdiction from prosecuting a defendant") (citing *Remeta v. Singletary*, 58 F.3d 513, 519 (11th Cir. 1996)). (*See also* Doc. 140 at 5–6.) Accordingly, the Court recommends granting the motion to dismiss any claims that implicate the Florida judgment.

**IV.   The Court recommends granting the motion to amend.**

Skinner seeks to amend the Fourth Amended Complaint to supplement his requested relief. (*See* Doc. 98.) Defendants failed to file a response to the motion. Pursuant to this Court's Local

16

Rules, Defendants' "failure to file a response constitutes consent to grant the motion." *United States v. $50,240.00 in United States Currency*, No. 22-CV-1033 KWR/SMV, 2021 WL 4552935, at *1 (D.N.M. Oct. 5, 2021) (quoting D.N.M. LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.") (gathering cases). While the Court harbors serious doubts that Skinner is entitled to his requested relief, the Court recommends granting the motion to amend as unopposed. *See, e.g.*, *Harden*, 320 F.3d at 1301 (discussing the possibility of nominal damages in the absence of an actual injury).

### V. The Court recommends denying the motion for default judgment.

Skinner asks the Court to enter default judgment against Defendants because they failed to file a reply brief to an earlier motion. (*See* Doc. 115.) As Defendants point out, reply briefs are not required. (*See* Doc. 116 at 1.) *See also Thierry v. Gibson*, 194 F.3d 1321, at *1 (10th Cir. 1999) (noting that "a reply by the movant" is optional). The failure to file a reply brief does not provide grounds for default judgment, and the Court recommends denying Skinner's motion.

### VI. Conclusion

The Court recommends denying in part Defendants' motion to dismiss (Doc. 140) with respect to Skinner's claims regarding violation of his extradition rights and conspiracy to violate his extradition rights. The Court recommends granting Defendants' motion with respect to Skinner's claims that attack the probable cause finding underlying the Florida charges or the Florida judgment.

The Court recommends granting Skinner's motion to amend the complaint (Doc. 98) and denying Skinner's motion for default judgment (Doc. 115).

**IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 140) be **GRANTED in part and DENIED in part** as outlined in this PFRD.

**IT IS FURTHER RECOMMENDED** that Skinner's Motion to Amend (Doc. 98) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Skinner's Motion for Default Judgment (Doc. 115) be **DENIED**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE